IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

SANDY R. PATE, *et al.*,            )
                                    )
            Plaintiffs,             )
                                    )
      v.                            )    CASE NO. 2:09-CV-1172-WKW
                                    )    [WO]
CHILTON COUNTY BOARD OF             )
EDUCATION, *et al.*,                )
                                    )
            Defendants.             )

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs Sandy R. Pate and Cynthia Stewart ("Teachers"[1]) bring this gender

discrimination and retaliation action against Defendant Chilton County Board of

Education ("CCBOE"), Keith Moore, the former superintendent of the CCBOE, and

Joe Mims, Ann Glasscock, Howard Daugherty, Chris Davis, Curtis Smith, Ann

Thomas, and George Walker, the board members of the CCBOE ("individual

defendants"), under Title VII of the Civil Rights Act,[2] and supposedly under 42

---

[1] For convenience and clarity, Plaintiff Sandy R. Pate will be referred to as "Ms. Pate" and Dr. Cynthia Stewart will be referred to as "Dr. Stewart" when referring to their persons or individual claims. "Teachers" will be used to refer to Ms. Pate and Dr. Stewart's joint contentions. While the court is aware that Dr. Stewart was not an active classroom teacher at all the times material to this case, principals are educators, and "Teachers" is the honorific that appears most apt to describe the plaintiffs collectively.

[2] In full, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended by the Civil Rights Act of 1991 and the Lilly Ledbetter Fair Pay Act of 2009.

U.S.C. §§ 1981 and 1983[3] for alleged gender discrimination against Ms. Pate and Dr. Stewart in hiring and personnel practices and for retaliation.

The case is before the court on the CCBOE's motion for summary judgment (Docs. # 31-33). Teachers have responded to this motion (Docs. # 38, 39, 41) and the CCBOE has replied (Doc. # 45). The summary judgment motion has been fully briefed and is ready for disposition. Both parties have filed motions to strike evidence cited in the pending motion for summary judgment; those motions have been denied as moot in a separate order entered this same date.[4] The CCBOE also has

---

[3] The problem of bringing a gender discrimination claim through 42 U.S.C. §§ 1981 and 1983 is addressed in Part IV.A., *infra*.

[4] Teachers filed a motion (Doc. # 40) to strike portions of the CCBOE's evidentiary submission supporting the motion for summary judgment (Doc. # 33). The CCBOE responded in kind with a motion (Doc. # 47) to strike portions of Teachers' evidentiary submission (Doc. # 39). The CCBOE responded to Teachers' motion (Doc. # 48) and Teachers replied (Doc. # 49). Teachers also responded to the CCBOE's motion to strike (Doc. # 50). The Federal Rules of Civil Procedure authorize the filing of a motion to strike in limited circumstances, not applicable here. *See* Fed. R. Civ. P. 12(e); *see also Luster v. Ledbetter*, No. 08cv551, 2009 WL 2448498, at *1 (M.D. Ala. Aug. 10, 2009) (explaining Rule 12(f) only applies to a pleading, not a brief). Although the form of the motions is not grounded in a federal procedure rule, the substance of the motions will be considered. Only evidence that is admissible on its face or can be reduced to admissible form and that complies with Federal Rule of Civil Procedure 56(e) will be considered in deciding a motion for summary judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24 (1986); *see also Macuba v. DeBoer*, 193 F.3d 1316, 1322–24 (11th Cir. 1999). Where challenged evidence is relied upon in this opinion, an appropriate explanation on its admissibility is included.

a motion to submit supplemental summary judgment argument, which has separately been denied as moot.[5]

Upon careful consideration of the briefs, the relevant law, and the record as a whole, the court finds that the 42 U.S.C. § 1983 claims alleging violations of § 1981 and Title VII are due to be dismissed,  and the CCBOE's motion for summary judgment is due to be granted on the Title VII claims.

## I.  JURISDICTION AND VENUE

Subject matter jurisdiction is exercised pursuant to 28 U.S.C. §§ 1331 and 1343, as well as 42 U.S.C. § 2000e, *et seq*.  The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations in support of both.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (*per curiam*); Fed. R. Civ. P. 56(a).  The party moving for summary judgment "always bears the initial responsibility of informing the district

---

[5] The court need not address the CCBOE's motion to submit supplemental summary judgment argument (Doc. # 46) to decide this case.

court of the basis for its motion, and identifying those portions of [the record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

If the movant meets its evidentiary burden, the burden shifts to the nonmoving party to establish, with evidence beyond the pleadings, that a genuine issue material to each of its claims for relief exists. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 324; *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). What is material is determined by the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (*per curiam*) (internal quotation marks and citation omitted).

A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001). However, if the evidence on which the nonmoving party relies "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). "A mere 'scintilla' of evidence supporting the [nonmovant's] position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party," *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990), and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (*per curiam*). Hence, when a plaintiff fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary

judgment is due to be granted in favor of the moving party. *Celotex Corp.*, 477 U.S. at 323.

The well-settled summary judgment standard is not altered in the employment discrimination context. Ultimately, "'trial courts should not treat discrimination differently from other ultimate questions of fact.'" *Chapman v. AI Transp.*, 229 F.3d 1012, 1026 (11th Cir. 2000) (en banc) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) (discussing employment discrimination review under Federal Rule of Civil Procedure 50)). Therefore, "the summary judgment rule applies in job discrimination cases just as in other cases. No thumb is to be placed on either side of the scale." *Id.*

On summary judgment, the facts must be viewed in the light most favorable to the nonmovant. *See Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002). Hence, "the 'facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case.'" *Id.* (quoting *Priester v. City of Riviera Beach*, 208 F.3d 919, 925 n.3 (11th Cir. 2000)).

### III.  FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of selections for administrative positions that the CCBOE made in the summer of 2008.  The facts, construed in the light most favorable to Teachers, follow.

**A.**   **The Chilton County Board of Education**

Chilton County is known for its peaches, beautiful landscape, and small town atmosphere.  It is home to around forty thousand people.[6]  Chilton County's public schools serve the educational needs of Chilton County's children, and are administered by the CCBOE.  The CCBOE consists of seven members.[7]  During the relevant events in this case, the Superintendent of the CCBOE was Keith Moore. (Doc. # 39, Ex. 2 at 10.)  Mr. Moore had the authority and responsibility for the daily operations, management, control, supervision, and regulation of the CCBOE.  (Doc. # 39, Ex. 2 at 10, 29.)

The employment practices of the CCBOE are at issue.  The CCBOE does not conduct a review of the job applicants or their files.  (Doc. # 39, Ex. 2 at 43-44.) Instead, the hiring process involves a committee selected by the CCBOE, which

---

[6] *See* 2010 United States Census, *available at* http://2010.census.gov/2010census/popmap/ipmtext.php?fl=01:01021.

[7] All seven members of the CCBOE during the relevant time of this litigation are defendants.

reviews the applications and conducts interviews, and then makes recommendations to the Superintendent for filling the positions. (Doc. # 33, Ex. 1, ¶¶ 3, 4; Ex. 2, ¶¶ 5, 10; Ex. 3, ¶ 3; Ex. 4, ¶ 3.) The members of the hiring committee for the Teachers were Superintendent Keith Moore, Willie Mae White, Carol Easterling, and Myra Davis.[8] (Doc. # 33, Ex. 1, ¶ 4; Ex. 2, ¶¶ 5, 10; Ex. 3, ¶ 3; Ex. 4, ¶ 3.) While the CCBOE was made aware of who was being recommended for a position, the Board was not informed about the identity of other applicants or their credentials. (Doc. # 39, Ex. 2 at 29-31.)

Upon receiving the recommendation of the committee, Mr. Moore in turn made recommendations for all employment actions, including hirings and transfers, to the full CCBOE for approval or disapproval. (Doc. # 39, Ex. 2 at 10, 29.) Mr. Moore had complete discretion on whom to recommend for employment, and the process he would use to make that decision. (Doc. # 39, Ex. 2 at 47.) The CCBOE's general practice was to vote for the person the Superintendent recommended. (Doc. # 39, Ex. 2 at 33-34.) Mr. Moore could not recall one instance in which the CCBOE rejected his recommendation for employment. (Doc. # 39, Ex. 2 at 47.)

---

[8] Ms. White, Ms. Easterling, and Ms. Davis are not parties to this action.

**B.**    **Ms. Pate's Claims**

Ms. Pate alleges that she was discriminated against by the CCBOE on the basis of being female when she applied for the transportation supervisor position and was denied that position.  (Doc. # 1 at 11-12.)  She is a female with over twenty years of experience as a teacher, and she had approximately four years experience as a licensed substitute bus driver for the Chilton County Schools.  (Doc. # 1 ¶¶ 18-22.)

Currently, Ms. Pate is a sixth grade teacher and a full-time bus driver.  (Doc. # 39, Ex. 7 at 16-19.)  She holds a Education Specialists Degree, Ed. S., with a 4.0 G.P.A. in all of her graduate level work.  (Doc. # 39, Ex. 7 at 20.)  Ms. Pate also holds a Certification in School Administration from the University of Montevallo.  (Doc. # 39, Ex. 7 at 20.)  She is also actively involved in her school and community.  (Doc. # 39, Ex. 19.)

*1.*    *Transportation Supervisor*

On or about June 24, 2008, Ms. Pate applied for the transportation supervisor position with the CCBOE.  (Doc. # 1 ¶ 40).  On July 15, 2008, the day after Ms. Pate interviewed for the position, Superintendent Moore made one large recommendation, for approximately 35 positions, to the board for mass approval.  (Doc. # 39, Ex. 30.)

One of the 35 jobs was the transportation supervisor job, which was given to Joe Dennis, a male applicant for the position.  (Doc. # 39, Ex. 30; Doc. # 39, Ex. 10.)

It is not contested that Ms. Pate was qualified for this position.  (Doc. # 39, Ex. 18 at 2.)  In addition to her educational, employment, and bus driving credentials, which included twenty years of teaching and four years of substitute bus driving, she made a perfect 100 score on her bus parts and engine parts exam.  (Doc. # 39, Ex. 21.)

Prior to receiving the transportation supervisor position, Mr. Dennis was an Agriscience teacher at Maplesville High School with fifteen years of experience. (Doc. # 33, Ex. 19.)  Mr. Dennis also had fourteen years of experience as a regular bus driver.  (Doc. # 33, Ex. 19.)

The transportation supervisor position does not require previous bus driving experience.  (Doc. # 39, Ex. 20.)  However, bus driving experience is relevant and may be beneficial for the transportation supervisor duties.  (Doc. # 39, Ex. 7 at 95-96.)  It is more difficult to drive a bus as a substitute than as a full-time driver. (Doc. # 39, Ex. 16.)

Before applying for the position, Mr. Dennis spoke with several CCBOE Board Members regarding this job opening. (Doc. # 39, Ex. 13 at 30-32, 112-13.)  Indeed, prior to July 15, 2008, Ms. Pate had complained to several Board Members that it was

rumored that Mr. Dennis was going to get the job before even the interview process had taken place.  (Doc. # 39, Ex. 7 at 97-98.)  While she was complaining about these rumors, Ms. Pate also objected to the perceived gender discrimination when she anticipated the CCBOE's selection of "a less qualified male" for the position.  (Doc. # 39, Ex. 7 at 97-98.)  No Board Members to whom Ms. Pate spoke expressed that they were offended or uncomfortable with her meeting with them about the position. (Doc. # 39, Ex. 33.)

On July 14, 2008, the CCBOE interviewed Ms. Pate.  During the interview process, Ms. Pate was asked what she would do to make sure the transportation department continued to receive high safety ratings.  (Doc. # 39, Ex. 21.)  She stated that she would make herself visible at the schools between 7:30 a.m. and 4:30 p.m. when the students and bus drivers were present.  (Doc. # 39, Ex. 21.)  She also made clear that she would be available when needed for the demands of the position, explaining that she would drive around the county prior to 6:00 a.m. to take an active role in assisting the Superintendent decide about the opening or closing of schools in the county based on weather conditions.  (Doc. # 39, Ex. 21.)

The CCBOE's representative, Ms. White,[9] stated that the selection committee had no problems with Ms. Pate's responses to the interview questions. (Doc. # 39, Ex. 26 at 270-73.) Ms. White does not recall any of the interviewers expressing concerns about Ms. Pate. (Doc. # 39, Ex. 26 at 276.) The CCBOE contends that full-time bus driving experience was a major reason for selecting Mr. Dennis. (Doc. # 32 at 16-18.) The additional factors the selection committee members cited were discomfort with Ms. Pate's conversations and apparent lobbying for the position, that the committee members understood her interview answer to be that she would only be available for the transportation supervisor job between 7:30 a.m. and 4:30 p.m., and the member's concerns over Ms. Pate's mechanical knowledge. (Doc. # 32 at 16-18.) There was another applicant, Mr. Littleton, with more bus driving experience but less time as a teacher than Mr. Dennis. (*Cf.* Doc. # 33, Ex. 19; Doc. # 39, Ex. 25.)

### 2.    *Retaliation Claims*

In March 2008, Ms. Pate filed formal complaints against then-transportation supervisor, Greg DeJarnett, for removing her from the substitute bus driver's list. (Doc. # 39, Ex. 22.) This was ultimately resolved administratively by Mr. Moore.

---

[9] Ms. White was the Rule 30(b)(6) designee of the CCBOE. She was also a member of the selection committee that interviewed Ms. Pate for the transportation supervisor position, and Dr. Stewart for the principal position.

(Doc. # 39, Ex. 2 at 99-102.)  Ms. Pate has not alleged any harm as a result of being removed, and then reinstated, on this list.  Ms. Pate also claimed that she was discriminated against when she was not named Curriculum Supervisor following her complaint about sex discrimination, but has since abandoned that claim, as that position was never filled.[10]  (Doc. # 41, at 29 n.14.)

## C.   Dr. Stewart's Claims

Dr. Cynthia Stewart is a Caucasian female.  (Doc. # 39, Ex. 32.)  She began working for the CCBOE in 1998 as an English instructor teaching advanced and regular English classes to juniors at Chilton County High School.  (Doc. # 39, Ex. 31 at 13.)  She was hired as the vice principal of Chilton County High School in 2000. While Dr. Stewart worked as vice principal, Larry Mahaffey was the principal and her supervisor.  (Doc. # 39, Ex. 31 at 15.)  Dr. Stewart held the position of vice principal until she was demoted to the position of part-time assistant principal/part-time English teacher on July 15, 2008.  (Doc. # 39, Ex. 31 at 14.)  Dr. Stewart holds a bachelor's degree, master's degree, certification in English and History and a Doctorate of Education Leadership Policy and Law.  (Doc. # 39, Ex. 31 at 13.)  Dr. Stewart is one of only four employees in the entire system of the CCBOE who holds

---

[10] Therefore, summary judgment on Ms. Pate's retaliation claim is due to be entered in favor of CCBOE.

an earned doctorate degree. (Doc. # 39, Ex. 26 at 150.) When she began her employment with the CCBOE, Dr. Stewart had seventeen years of administrative experience. (Doc. # 39, Ex. 35.)

### 1.    *Principal of Chilton County High School*

Dr. Stewart is alleging gender discrimination for not being selected for the principal position at Chilton County High School. On or about June 12, 2008, Dr. Stewart applied for and interviewed for that position. (Doc. # 39, Ex. 31 at 18-19.) It is not contested that she met and exceeded the qualifications for this position. Numerous teachers, members of the community, and the retiring Principal made recommendations to the Superintendent and Board on behalf of Dr. Stewart. (Doc. # 39, Ex. 34.) During her interview for the principal position, she received positive feedback from most of the members of the interview committee, except from Mr. Moore. (Doc. # 39, Ex. 31 at 21-22.) Mr. Moore appeared distracted on the telephone, and he left the room during the interview. (Doc. # 39, Ex. 31 at 21.)

On June 17, 2008, Greg DeJarnett was selected for the position of principal of Chilton County High School. (Doc. # 39, Ex. 5.) Dr. Stewart's educational qualifications and administrative experience exceeded those of Mr. DeJarnett. (Doc. # 39, Ex. 34, 35, 38.) The CCBOE contends that Mr. DeJarnett met the minimum

qualifications for the position of principal. (Doc. # 32 at 7; Doc. # 39, Ex. 38.)  Dr. Stewart does not contest that, in the opinion of the selection committee, Mr. DeJarnett had a "good interview."  (Doc. # 33, Exs. 1-4.)

The CCBOE argues that Dr. Stewart was not selected for the position because she allegedly did not know there was a problem with the reduction in funds for the Child Nutrition Program which could be triggered by bringing commercial food into the lunchroom.  The CCBOE specifically cited an incident during one lunch period in which teachers were seen eating food out of a pizza box.  (Doc. # 39, Ex. 26 at 334.)  Dr. Stewart was not the administrator responsible for the lunchroom duties at Chilton County High School.  (Doc. # 39, Ex. 34.)  There is no evidence that Dr. Stewart knew of the food being brought in.  (Doc. # 39, Ex. 26 at 205.)

Additionally, the CCBOE argues that there was a discipline problem at Chilton County High School, including students leaving to go on fire calls for the fire department.  (Doc. # 32, at 7-8.)  The specific incident referred to by the selection committee was students leaving school, without checking out, to volunteer for the local fire department.  The students who left to go on the fire calls were in EMT training and had their parents' permission to leave with the acknowledgment of the Principal, not Dr. Stewart.  (Doc. # 39, Ex. 34.)  The CCBOE recognizes that it would

be hard to stop students from checking out of school if they have their parents' permission to do so.  (Doc. # 39, Ex. 26 at 329.)  This problem is ongoing.  (Doc. # 39, Ex. 4 at 270.)  The CCBOE argues that Mr. DeJarnett was selected because of his tough stance on discipline, and that he conveyed a "no-nonsense attitude."  (Doc. # 32, at 8.)

During the interview process for the principal's position, Ms. White informed the selection committee that her concerns with Dr. Stewart were that in the past students had left to go on fire calls, and that, on some date in the past, she saw Dr. Stewart in the lunchroom when another teacher had a pizza box on the teachers' table. (Doc. # 39, Ex. 26 at 334.)  Mr. Moore was not sure Dr. Stewart knew about the problems or did anything wrong.  (Doc. # 39, Ex. 2 at 142-151.)

### 2. *Retaliation and Demotion to Assistant Vice Principal/English Teacher[11]*

Dr. Stewart alleges that she was retaliated against for complaining to Mr. Mahaffey about gender discrimination in the hiring of Mr. DeJarnett. (Doc. # 39, Ex. 31 at 26.)  Mr. Mahaffey expressed his opinion that it was due to the "good old boys

---

[11] Dr. Stewart has conceded that she is only pursuing a retaliation claim in connection with her July 15, 2008 reassignment from assistant principal to part-time assistant principal/part-time English teacher.  (Doc. # 41 at 45 n 20.)

16

club."[12]  (Doc. # 39, Ex. 31 at 26.)  Dr. Stewart does not know if this complaint, or

any other complaint, was referred to the CCBOE prior to her reassignment.  (Doc.

# 39, Ex. 31 at 26-29, 143-45.)  Mr. Mahaffey was not a decision-maker with the

power to hire or fire Dr. Stewart.

Within two weeks of Mr. DeJarnett starting the job of principal, he called Dr.

Stewart into his office and informed her that "the powers to [sic] be" informed him

they wanted a "clean slate" and she was being removed from her vice principal's

position.  (Doc. # 39, Ex. 31 at 53-54.)  Dr. Stewart assumed this to be a directive

from Mr. Moore.  (Doc. # 39, Ex. 31 at 53-54.)  Mr. DeJarnett informed Dr. Stewart

that she was being moved to the part-time assistant principal's position.  (Doc. # 39,

Ex. 31 at 55.)  In a subsequent conversation, Mr. DeJarnett informed Dr. Stewart that

she had to apply for the position of part-time assistant principal/part-time English

teacher.  (Doc. # 39, Ex. 31 at 64.)  Dr. Stewart informed Mr. DeJarnett that she did

not want to be removed from her vice principal's position because she had not done

---

[12] Dr. Stewart has also submitted with her evidence numerous letters from the community
disapproving of the personnel selections of the CCBOE, and the board's apparent priorities for
the school system.  Additionally, she referred to statements made in support of her in telephone
calls, letters and local newspapers.  In short, this evidence shows that there is support for Dr.
Stewart in the community, and dissatisfaction with the selection of Mr. DeJarnett and with his
performance as principal of Chilton County High School.  The statements also reflect the
opinions and beliefs of certain members of the community that gender discrimination had
occurred.  Evidence of the opinions of other members of the community is irrelevant to the
determination of the claims in this case, and will not be considered.

anything to warrant removal from her job, and further questioned why she had to apply for a job she did not request.  (Doc. # 39, Ex. 31 at 64.)

During their conversation, Mr. DeJarnett picked up the telephone and called an unknown person about Dr. Stewart having to apply for the position of part-time assistant principal/part-time English teacher position.  (Doc. # 39, Ex. 31 at 63-64.) When he hung up from the telephone call, Mr. DeJarnett informed Dr. Stewart that if she wanted to keep a job, she would have to apply for the part-time assistant principal's position.  (Doc. # 39, Ex. 31 at 63-64.)  Dr. Stewart realized she was tenured in her vice principal position and could only be removed for cause.  (Doc. # 39, Ex. 31 at 68-69.)  Nevertheless, Dr. Stewart went online and completed an application for the job.  (Doc. # 39, Ex. 31 at 64.)

After July 17, 2008, Dr. Stewart received a letter in the mail informing her that, on July 15, 2008, the Board had approved her request to be transferred.  (Doc. # 39, Ex. 31 at 65.)  As soon as she received the letter, Dr. Stewart met with Superintendent Moore and informed him that she had not requested a transfer or a removal from her position of vice principal, that she did not understand why she was being moved, and that there was no basis for taking away her job of eight years.  (Doc. # 39, Ex. 31 at 65-67.)  Mr. Moore sent Dr. Stewart another letter which stated that she had been

reassigned to the position of part-time assistant principal/part-time English teacher. (Doc. # 39, Ex. 31 at 66.)  Mr. Moore admits that, if Mr. DeJarnett had told Dr. Stewart that she was being moved to a part-time assistant principal position, it would violate policy.  (Doc. # 39, Ex. 2 at 247-51.)

Jim Shannon, a male, was hired to replace Dr. Stewart in the vice principal's position.  (Doc. # 39, Ex. 31 at 70.)  Mr. Shannon had fewer qualifications and less experience than Dr. Stewart.  (Doc. # 39, Ex. 39.)  After Dr. Stewart was moved from the position of vice principal, she complained to CCBOE board member Ann Glasscock about the "good old boys network."  (Doc. # 39, Ex. 31 at 37.)  Dr. Stewart and Defendant Glasscock discussed the removal from the vice principal position and discussed the "good old boy network."[13]  (Doc. # 39, Ex. 31 at 38.)  Dr. Stewart lost her office, and had her responsibilities reduced as a result of this change of position. (Doc. # 39, Ex. 31 at 70, 129.)

## IV. DISCUSSION

The CCBOE contends with five arguments that summary judgment is appropriate on all claims.  The arguments can be categorized as three attacks on the

---

[13] Dr. Stewart's description of the conversation and the particulars of what Ms. Glasscock said are vague.  In the light most favorable to her, it is taken that Dr. Stewart's gender discrimination claims were discussed with Ms. Glasscock.

Teachers' claims against the individual defendants, and two arguments on the merits of whether Teachers have properly established instances of discrimination.

The CCBOE has three arguments against the Teachers' claims that concern the individual defendants.  Broadly, these three arguments implicate a merger of claims against the board, entitlement to qualified immunity, and that the Teachers' claims are barred because the individual defendants were not the final decision makers for employment decisions.  The merits of these three arguments do not need to be addressed because there is a fundamental flaw with the Teachers' claims against the individual defendants, which is addressed in Part IV A.

The CCBOE has two remaining arguments against the Teachers' Title VII discrimination and retaliation claims.  First, the CCBOE argues that the Teachers cannot raise a genuine issue of material fact that the legitimate, nondiscriminatory reasons offered for the employment decisions are pretextual.  Second, the CCBOE argues that the Teachers have not made prima facie cases for retaliation.  Teachers contend that summary judgment should be denied because there are genuine issues of material fact regarding every element of their retaliation claim.  (Doc. # 131, at 1.) These arguments are addressed in Part IV B.  For the following reasons, the 42 U.S.C.

§ 1983 claims are due to be dismissed, and the motion for summary judgment is due to be granted on the Title VII claims.

## A.   <u>Claims Against Individual Defendants</u>

The claims against the individual defendants are all due to be dismissed because there is no basis for the Teachers' 42 U.S.C. § 1983 claims.  The CCBOE has broadly argued that the individual claims against the non-board defendants should be dismissed.[14]  However, the actual flaw with the Teachers' § 1983 claims is the fact that they are based on 42 U.S.C. § 1981[15], which is limited to claims of racial discrimination, and is not applicable to the gender discrimination claims alleged here.  Therefore, none of the particular arguments by the CCBOE needs to be resolved to dismiss the § 1983 claims against the individual defendants.

The CCBOE did not raise the issue of whether § 1981 is an appropriate source of rights for the Teachers' § 1983 claims.  Despite this oversight and omission, the court will address the issues with the § 1983 claims *sua sponte*.  Federal courts have

---

[14] The CCBOE does not argue the specific flaws with the § 1981 claim examined in this section.  Instead, the CCBOE relies on theories of the official capacity claims merging with the suit against the Board, qualified immunity of the individual defendants and final decision maker status.  No opinion is expressed on the merits of any of those arguments.

[15] 42 U.S.C. § 1981 provides, in pertinent part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State . . . to make and enforce contracts . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981.

an independent duty to determine whether they have jurisdiction and to "police the boundaries of their own jurisdiction." *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 165 (11th Cir. 1997).  "In a given case, a federal district court must have at least one of three types of subject matter jurisdiction: (1) jurisdiction under a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1469 (11th Cir. 1997).  The party who seeks to invoke a federal district court's jurisdiction bears the burden of establishing the court's authority to hear the case. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); s*ee also Caterpillar Inc. v. Williams*, 482 U.S. 386, 391 (1987). "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar*, 482 U.S. at 392.

In order to have subject matter jurisdiction over Teachers' § 1983 claim, there must be an allegation of a violation of a federal constitutional right.  Teachers repeatedly state that they are bringing a claim under § 1983 to enforce rights under § 1981.  (Doc. # 1 at 1-2, 11-16, 18; Doc. # 41 at 1 n.1.)  The Teachers do not argue

that any other source of federal rights underlies the § 1983 claim.  The barest mention of the Fourteenth Amendment is put forth in the introductory paragraph of the complaint, but no specific provision of that amendment is cited or relied upon.[16]

The kinds of discriminatory practices covered by Title VII include discrimination because of race, national origin, sex and religion.  However, § 1981, which is based on the Civil Rights Act of 1866, is much more narrow and does not cover gender discrimination.  While related in that both statutes target employment discrimination, Title VII is distinct from § 1981.  *See Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 461 (1975) ("[T]he remedies available under Title VII and under § 1981, although related, and although directed to most of the same ends, are separate, distinct, and independent.").

The Supreme Court's examinations of § 1981 have noted that the classes of persons protected by the statute are limited to racial or ethnic discrimination.  "Based on the history of § 1981, we have little trouble in concluding that Congress intended to protect from discrimination identifiable classes of persons who are subjected to

---

[16] Whether Teachers could have successfully alleged a violation of the Equal Protection Clause of the Fourteenth Amendment, based on gender discrimination, is irrelevant here.  The complaint will not be construed to put forth claims that were not artfully pleaded.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . .").

intentional discrimination solely because of their ancestry or ethnic characteristics." *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987); *see also Runyon v. McCrary*, 427 U.S. 160, 167 (1976) ("§ 1981 is in no way addressed to such categories of selectivity [as to choices between males and females or religious faiths].").

Cases from the other circuits have recognized that § 1981 does not extend protection to classifications based on gender. "Because [§ 1981], on its face, is limited to issues of racial discrimination in the making and enforcing of contracts, courts have concluded that sex-based claims are not cognizable under 42 U.S.C. § 1981." *Anjelino v. New York Times Co.*, 200 F.3d 73, 98 (3d Cir. 1999); *Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir. 1998) (explaining that § 1981 does not prohibit discrimination based on age, gender, national origin, or religion); *Jones v. Bechtel*, 788 F.2d 571, 574 (9th Cir. 1986) (holding that a plaintiff could not assert a § 1981 claim based on gender discrimination); *Bobo v. ITT, Cont'l Baking Co.*, 662 F.2d 340, 343 (5th Cir. Nov. 1981) ("The drafters of [§] 1981 had no intention to disturb public or private authority to discriminate against women.").[17]

---

[17] The Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions decided prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*). *Bobo* was decided two months after *Bonner*, making it persuasive authority and not binding authority.

Teachers do make reference to the race of the Teachers in their complaint. (Doc. # 1 ¶¶ 22, 27.)  However, nowhere in the complaint or in any of the supporting evidence do the Teachers allege that the discrimination had a racial component.  The only ground Teachers argue is that they were discriminated against for being female. Because the Teachers only allege discrimination based on gender, § 1981 is wholly inapplicable here.  Therefore, it cannot provide the basis for the Teachers' § 1983 claims.

Nor can Teachers rely on their Title VII claims to provide a basis for separate § 1983 claims.  In *Great American Federal Savings & Loan Ass'n v. Novotny*, 442 U.S. 366, 370-78 (1979), the Supreme Court held that a claim under 42 U.S.C. § 1985(3) (which, like § 1983, does not create substantive rights but provides a remedy for violations of rights created elsewhere) cannot be based upon a claimed violation of Title VII.  The Supreme Court furthered the presumption that § 1983 is not a vehicle for remedies for Title VII violations in *Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1, 20-21 (1981) (§ 1983 claims are precluded when Congress has provided a comprehensive and exclusive remedy in other statutes).

Since *Novotny* and *Middlesex*, the federal courts have largely found that a Title VII action forecloses a claim under § 1983, when both are based upon the same underlying facts.  *See*, *e.g.*, *Rivera v. City of Wichita Falls*, 665 F.2d 531, 534 n.4 (5th Cir. Unit A 1982); *Ramirez v. Burr*, 607 F. Supp. 170 (S.D. Tex. 1984).  Courts have allowed § 1983 claims to proceed where there is an independent source of rights, separate from the rights protected under Title VII, at issue in the case.  *See Johnston v. Harris Cnty. Flood Control Dist.*, 869 F.2d 1565, 1575-76 (5th Cir. 1989) (when unlawful employment practices violate not only Title VII but also independent rights, plaintiff may proceed under both § 1983 and Title VII); *see also Starrett v. Wadley*, 876 F.2d 808, 813-14 (10th Cir. 1989); *Carrero v. New York City Hous. Auth.*, 890 F.2d 569, 575-576 (2d Cir. 1989).

Because there is no source of federal constitutional rights alleged in the complaint on which to base the § 1983 claims, all of Teachers' claims under § 1983 against the individual defendants are due to be dismissed.

**B.    Title VII Claims**

The Teachers' remaining claims are all Title VII claims directed against the employer only.  Ms. Pate alleges that the CCBOE discriminated against her on the basis of being female when she applied for the transportation supervisor position and

was denied the position in favor of a male applicant.[18]  Dr. Stewart alleges that she was discriminated against for being female in two instances by the CCBOE:  when she applied for the principal position at Chilton County High School, and when she was moved from vice principal to assistant vice principal/English teacher.

Title VII's key nondiscrimination provision, 42 U.S.C. § 2000e-2(a)(1), holds employers liable for disparate treatment.  *See Ricci v. DeStefano*, 129 S. Ct. 2658, 2672 (2009).  A disparate treatment claim under Title VII "occurs where an employer 'has treated [a] particular person less favorably than others because of' a protected trait."  *Id.* (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 985-86 (1988)).  "A disparate-treatment plaintiff must establish 'that the defendant had a discriminatory intent or motive' for taking a job-related action."  *Id.*  A prima facie case of gender discrimination may be established in two ways: (1) by presenting direct evidence of discrimination or (2) by presenting circumstantial evidence using a variation of the four-part test delineated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973); *see Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287, 1300 (11th Cir. 2007) (explaining the two ways of violating Title VII through sex-based discrimination); *see also Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d

---

[18] Ms. Pate has abandoned her retaliation claim related to the Curriculum Supervisor position, and has only one Title VII discrimination claim remaining.

1354, 1358 (11th Cir. 1999). There has been no direct evidence of discrimination offered in this case. Instead, the Teachers argue that discrimination should be inferred from the employment actions and circumstantial evidence.

When relying on circumstantial evidence to support his or her claim, a plaintiff may demonstrate a prima facie case of discrimination by showing that: "(1) he [or she] belongs to a [protected class]; (2) he [or she] was subjected to [an] adverse job action; (3) his [or her] employer treated similarly situated employees outside his [or her] classification more favorably; and (4) he [or she] was qualified to do the job." *Holifield*, 115 F.3d at 1562. When comparing the plaintiff's treatment to that of employees outside his or her protected class, "the plaintiff must show that he and the employees are similarly situated in all relevant respects." *Id.* If a plaintiff cannot identify a similarly situated comparator, then "summary judgment is appropriate where no other evidence of discrimination is present." *Id.* "Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Id.* To establish a prima facie case of discriminatory failure to promote, the plaintiff must prove that he or she was qualified for and applied for the promotion and that other equally or less qualified employees

who were not members of the protected class were promoted. *Denney v. City of Albany*, 247 F.3d 1172, 1183 (11th Cir. 2001).

The burden of proof in Title VII retaliation cases also is governed by the framework established in *McDonnell Douglas*. *See* 411 U.S. at 802; *see also Goldsmith v. City of Atmore*, 996 F.2d 1155, 1162-63 (11th Cir. 1993). To establish a prima facie case of retaliation under Title VII, a plaintiff must prove that (1) he or she engaged in statutorily protected activity, (2) he or she suffered a materially adverse action, and (3) there was some causal relation between the two events. *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008).

After the plaintiff has established the elements of the prima facie case, the employer must articulate a legitimate, nonretaliatory and nondiscriminatory reason for the challenged employment action. *Id.* Ultimately, to avoid summary judgment on both claims, the plaintiff must raise a genuine issue of material fact that each of the employer's articulated reasons was pretextual. *See Chapman*, 229 F.3d at 1024–25. The plaintiff may establish pretext by undermining the credibility of the proffered explanation. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997).

A legitimate reason for promoting or hiring one applicant over another can be as simple as finding one candidate more qualified for the position.  *See EEOC v. Alton Packaging Corp.*, 901 F.2d 920, 925 (11th Cir. 1990) (promoting someone who is more qualified is a nondiscriminatory reason, though this reason must have been part of the decision maker's rationale at time the promotion was made).  Where a claim of discrimination is based on relative qualifications, the "'disparities [between the successful applicant's and her own] qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'"  *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006) (quoting with approval *Cooper v. S. Co.*, 390 F.3d 695, 732 (11th Cir. 2004)); *see also Ash v. Tyson Foods*, 190 F. App'x 924, 927 (11th Cir. 2006) (collecting cases where "comparative qualifications and other alleged indicia of discrimination (i.e., subjective criteria used by the decision-maker, plaintiff's belief that his (or her) qualifications were superior), were held insufficient for a factfinder reasonably to find that the decision was not based on the qualifications of the applicants").

As stark as the difference must be, the inquiry does not simply rubber stamp any argument the defendant puts forward that one applicant was more qualified than

the other. *See Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1076 (11th Cir. 2003) ("[a] defendant may not merely state that the employment decision was based on the hiring of the 'best qualified' applicant but must articulate specific reasons for that applicant's qualifications such as 'seniority, length of service in the same position, personal characteristics, general education, technical training, experience in comparable work or any combination' of comparable criteria"); *see also Combs,* 106 F.3d at 1543 (employer entitled to summary judgment because selectee had more supervisory experience than plaintiff for supervisory rather than technical position); *Reynolds v. Glynn Cnty Bd. of Educ.*, 968 F. Supp. 696, 702–03 (S.D. Ga. 1996) (plaintiff failed to show that defendant's legitimate, nondiscriminatory reason for promotion, that selectee was better qualified, was pretextual), *aff 'd mem.*, 119 F.3d 11 (11th Cir. 1997).

It is not enough that the plaintiff believes that he or she is more qualified than the person who was selected. The concerns with employment decisions that can be addressed by a Title VII action are whether the employment decision was motivated by discrimination based on gender, and not "whether the employment decision is prudent or fair." *Lee v. GTE Fla., Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000) (courts are not in business of judging whether an employment decision is prudent or fair).

An employee may not "substitute his business judgment for that of the employer." *Chapman*, 229 F.3d at 1030. The fairness of such a decision is not the relevant inquiry. The "sole concern is whether unlawful discriminatory animus motivate[d] a challenged employment decision." *Damon,* 196 F.3d at 1361.

### 1.    *Ms. Pate's Application for Transportation Supervisor*

Ms. Pate alleges that she was discriminated against by the CCBOE when it selected Mr. Dennis over her for the transportation supervisor position. The CCBOE does not contest that Ms. Pate has put forward a prima facie gender discrimination case. Instead, the CCBOE offers nondiscriminatory reasons for the promotion decision. The CCBOE contends that full-time bus driving experience was a major reason for selecting Mr. Dennis. (Doc. # 32 at 16-18.) The additional factors the CCBOE cited were discomfort with Ms. Pate's conversations and apparent lobbying for the position, that it understood her interview answer to be that she would only be available for the transportation supervisor job between 7:30 a.m. and 4:30 p.m., and that the CCBOE was concerned with Ms. Pate's mechanical knowledge. (Doc. # 32 at 16-18.)

The court assumes, without deciding, that for some of these reasons, Ms. Pate could potentially convince a factfinder that the reasons given by the CCBOE were

pretextual.  Ms. Pate could point to the interview notes (Doc. # 39, Ex. 25) to overcome the mistaken conclusion about her availability.  Several of the notations reveal that the interviewers understood her answer to be that she would be visible at the school during those hours, and when read with her previous answers stating she would be available before 6:00 a.m. in weather emergencies, Ms. Pate could fairly argue pretext.  Ms. Pate could rely on her test scores to dispel doubts about her mechanical knowledge of the busses.

However, Ms. Pate has not rebutted the CCBOE's choice of a transportation supervisor with ten years more bus driving experience than her as a non-pretextual reason.  The CCBOE concedes that Ms. Pate was qualified, and she does not contest that Mr. Dennis was qualified.  Ms. Pate does argue that she was more qualified.  However, the evidence clearly shows that Mr. Dennis had more bus driving experience than Ms. Pate.  Ms. Pate must demonstrate that when deciding between two qualified candidates, preferring additional bus driving experience was not an acceptable factor to decide between them, but was instead pretextual.

Ms. Pate argues that bus driving experience is a pretext for discrimination because it was not part of the job description, and there was another candidate with more bus driving experience.  These points do not raise a genuine issue of material

fact as to pretext. Nowhere in the deposition testimony of Ms. White or in the interview notes was bus driving experience noted as the sole, deciding factor. (*See* Doc. # 33, Ex. 2A, 14.) Instead, this factor is only offered as support for a decision between two qualified candidates. Just as in *Steger,* 318 F.3d 1066, the CCBOE can choose the best qualified candidate in its judgment, since it has identified specific, comparable qualification criteria that differ between the candidates.

The CCBOE is entitled to give weight to this reason because the transportation supervisor position is a supervisory position that requires experience across a variety of fields. The position is an administrative position that combines personnel management, route planning, automotive knowledge, and educational acumen. Selections for positions that require a variety of skills are less likely to be found pretextual, especially when choosing between multiple, qualified candidates who offer different experiences and skill sets. *See Combs,* 106 F.3d at 1543 (employer entitled to summary judgment because selectee had more supervisory experience than plaintiff for supervisory rather than technical position).

The other applicant, Mr. Littleton, had more bus driving experience but less time as a teacher than Mr. Dennis. (*Cf.* Doc. # 33, Ex. 19; Doc. # 39, Ex. 25.) Mr. Dennis combined teaching experience and bus driving experience. It was not

unlawful to select him as he was the candidate who possessed over ten years each of educational experience and bus driving experience.  There is not sufficient evidence to raise a genuine issue of material fact that in valuing the extra bus driving experience of Mr. Dennis, the choice of Mr. Dennis over Ms. Pate was a pretext for gender discrimination.

Additionally, the CCBOE cited discomfort with Ms. Pate's conversations and apparent lobbying for the position.  (Doc. # 32 at 16-18.)  The evidence offered by Ms. Pate to contradict this reason is that Mr. Dennis also talked to the board members, and that none of the board members expressed any discomfort in meetings with her.   While suggestive of the fact that Ms. Pate's meetings were not ill-taken, reactions during the meeting are not proof of what was occurring in the minds of the board members.  Nor does the fact that Mr. Dennis had discussions with the board members force the inference that they were displeased with him for lobbying for the position.  However, given the sufficiency of the explanation that the selection committee favored the bus driving experience Mr. Dennis had, it is unnecessary to reach a conclusion on whether the lobbying discomfort was pretextual or not.

Ms. Pate also argues that the reasons given by the CCBOE are pretextual because they are "shifting reasons."  (Doc. # 41 at 33.)  They argue that a failure to

provide documentation about the decision making at the time of the selection, and the inclusion of additional reasons during litigation, constitutes shifting reasons which demonstrate the pretextual nature of the rationale provided by the CCBOE.  This argument misstates what constitutes "shifting reasons."  The new reasons relied on in litigation must plainly contradict the reasons relied on at the time of the decision to be found to be pretextual.  The reasons must contradict each other, and not merely be cumulative.  *See Bechtel Constr. Co. v. Sec'y of Labor*, 50 F.3d 926, 935 (11th Cir. 1995) (noting that the "shifting explanation" of arguing that workplace attitude was the *only* reason for terminating the employee during trial proceedings, and then attempting to rely on health issues as a cause for termination on appeal, demonstrates that the new reasons are pretextual); *see also Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1194 (11th Cir. 2004) (inconsistencies in the reasons given for an employment action can undermine credibility of a witness to demonstrate pretext for discrimination).

The CCBOE has not contradicted itself or relied on mutually exclusive theories for why Ms. Pate was not selected for the position.  Rather than abandoning one reason for another, the CCBOE has simply offered additional reasons.  Since the reasons put forth by the CCBOE do not conflict with each other, they do not lose

credibility because they are not inconsistent.  Ms. Pate, at most, shows that the evidence contradicts some of the reasons.  She has a colorable argument that Ms. White's testimony that she did not recall any problems with Ms. Pate's interview would contradict the CCBOE's concerns over Ms. Pate's availability.  (Doc. # 39, Ex. 26 at 270-76.)  However, Ms. Pate never demonstrates that the reasons themselves contradict the other reasons offered, as would be required to demonstrate that the shifting reasons were pretextual.

Even though bus driving experience was not a primary qualification for the transportation supervisor position, using it as a ground of decision later did not constitute a shifting reason.  It is not alleged that bus driving experience is unimportant, or that the CCBOE ever stated that it would not consider bus driving experience as a relevant factor for selection.  The CCBOE did not abandon primary qualifications for the position after the fact in favor of a pretextual qualification. Instead, bus driving experience was used to distinguish between numerous qualified candidates.  The rationale and criteria for hiring never shifted, but were revealed after this case was commenced.  There is no indication that the CCBOE's reasons shifted, and Ms. Pate cannot demonstrate that the reasons CCBOE provided were a pretext

for gender discrimination.  The CCBOE is entitled to summary judgment on Ms. Pate's discrimination claim.

### 2.      Dr. Stewart's Application for Principal of Chilton County High School

Dr. Stewart alleges that she was discriminated against by the CCBOE when it selected Mr. DeJarnett over her for the principal position at Chilton County High School.  The CCBOE does not contest that Dr. Stewart has put forward a prima facie gender discrimination case.   Instead, the CCBOE argues that it offers non-discriminatory reasons for the promotion decision.

The CCBOE offers several reasons for choosing Mr. DeJarnett over Dr. Stewart.  First, it argues that the selection committee was troubled about Dr. Stewart's response to a question about the Child Nutritional Program.  (Doc. # 32, at 23.)  Ms. White told the committee that the Child Nutritional Program funding was in danger, from incidents such as teachers having a pizza box in the lunchroom, and blamed the situation on Dr. Stewart.  (Doc. # 39, Ex. 26 at 205.)  Second, the CCBOE argues that the selection committee thought that discipline was lax at Chilton County High School, and wanted to fix this problem.  (Doc. # 32, at 23.)  This perception was brought about, in part, by students leaving campus to volunteer for the fire department and to get lunch, without permission.  (Doc. # 32, at 8.)  The CCBOE

argues that it was time for a change in leadership, and that it preferred Mr. DeJarnett's attitude and leadership style.  (Doc. # 32, at 8.)

The selection committee ended up blaming the forbidden pizza in the lunchroom and the school's truancy issues on Dr. Stewart.  Dr. Stewart has argued and produced evidence that she had no responsibility for either of these problems. Even assuming that linking Dr. Stewart to those incidents was mistaken, unless Dr. Stewart can demonstrate that the mistake was not made in good faith, she cannot show that reliance on those reasons is a pretext for gender discrimination.  The truth of the allegations is not at issue in this inquiry.  Rather, if the employer mistakenly, but in good faith, believes that the employee has done wrong, reliance on such a mistaken belief is sufficient to disclaim any discriminatory animus because the plaintiff will have failed to show that it was a discriminatory reason the employer relied on for the action, rather than a mistaken reason.  *See Baker v. Russell Corp.*, 372 F. App'x 917, 920 (11th Cir. 2010).  Whether an employee actually engaged in the misconduct that was reported to the decision maker is irrelevant to the issue of whether the decision maker could reasonably believe that the employee had done wrong.  *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d, 1466, 1470 (11th Cir. 1991).

Even giving Dr. Stewart the benefit of the doubt, and assuming, without deciding, that Dr. Stewart could demonstrate bad faith reliance on the problems

blamed on Dr. Stewart by Ms. White, Dr. Stewart would still be unable to prevail at the summary judgment stage. This is because the CCBOE can rely on its desire for a change of leadership and attitude in the school administration without violating Title VII. The CCBOE perceived that Mr. DeJarnett had a no-nonsense attitude and would restore discipline to the high school. (Doc. # 32, at 8.) Even with the disparity in credentials, the CCBOE had nondiscriminatory grounds to act on such a preference.

A preference for a different attitude and leadership style in a leadership position is an appropriate ground for an employment decision, and does not disqualify the reason as pretextual. *See Denney v. City of Albany*, 247 F.3d 1172, 1187 (11th Cir. 2001) (the use of subjective criteria in promotion decisions, such as a candidate's maturity and leadership ability, is not a pretext for discrimination). While such decisions may be quite subjective, subjectivity alone does not disqualify a reason. *See Chapman*, 229 F.3d at 1034 ("subjective reasons are not the red-headed stepchildren of proffered nondiscriminatory explanations for employment decisions").

The CCBOE can rely on the quality of the interview and leadership qualities of Mr. DeJarnett without having these considerations invalidated as pretextual reasons. *See Bass v. Bd. of Cnty. Comm'rs, Orange Cnty., Fla.*, 256 F.3d 1095, 1106

(11th Cir. 2001) ("An interview is frequently necessary to assess qualities that are particularly important in supervisory or professional positions."). Even if Dr. Stewart did nothing wrong and was more experienced and credentialed, the selection committee could still fairly prefer Mr. DeJarnett if he offered Chilton County High School a different style of leadership and impressed the committee during the interview.

Finally, Dr. Stewart attempts to muster the dissatisfaction of the community and other educators to show that she was a better choice than Mr. DeJarnett, and that Mr. DeJarnett has not run Chilton County High School up to either his promised potential or Dr. Stewart's capabilities. Regardless of whether this is so, events after the employment decision is made are, at best, a reflection of what the reasons for the decision were at the time. The decision before the court is not who was the best person to run the school, but whether Dr. Stewart has brought forth material facts to support a finding that there was gender discrimination in the employment decision. Neither the subsequent events nor the evidence surrounding the decision making process at the time when the new principal was chosen refutes the reasons proffered by the CCBOE. Summary judgment is due on Dr. Stewart's Title VII claim regarding the selection of Chilton County High School's principal.

### 4.     Dr. Stewart's Demotion to Assistant Vice Principal/English Teacher

Dr. Stewart concedes that she is only pursuing a retaliation claim related to her reassignment to the part-time assistant principal/part-time English teacher position and not for any other supposed retaliatory actions by the CCBOE. (Doc. # 41 at 45 n.20.) Dr. Stewart alleges that the CCBOE retaliated against her by demoting her following her complaints about gender discrimination. She argues that Mr. DeJarnett forced her to apply for the part-time assistant principal/English teacher position despite the fact that she was tenured in her vice principal position. Dr. Stewart alleges that this was due to her opposition and complaints about gender discrimination. She relayed these complaints to Mr. Mahaffey, the outgoing principal of Chilton County High School, before her application for the new position, and to Ann Glasscock following her reassignment. Dr. Stewart does not know if this complaint, or any other complaint, was referred to the CCBOE prior to her reassignment. (Doc. # 39, Ex. 31 at 26-29, 143-45.)

Dr. Stewart cannot make out a prima facie case of retaliation. *See Goldsmith*, 573 F.3d at 1277. Title VII prohibits discrimination against any employee because he or she (1) "has opposed any practice made an unlawful employment practice by this subchapter" (opposition clause), or (2) "has made a charge, testified, assisted, or

participated in any manner in an investigation, proceeding, or hearing under this subchapter" (participation clause).  42 U.S.C. § 2000e-3(a).  To engage in protected activity as required to satisfy the prima facie case, "the employee must still, 'at the very least, communicate her belief that discrimination is occurring to the employer,' and cannot rely on the employer to 'infer that discrimination has occurred.'"  *Demers v. Adams Homes of NW. Fla., Inc.*, 321 F. App'x 847, 852 (11th Cir. 2009).

Nowhere in the complaint or evidence is there a connection shown between Dr. Stewart's complaints and the employment action.  She presents no evidence that anyone on the CCBOE was aware of her complaints and opposition to alleged gender discrimination prior to Mr. DeJarnett informing her that she had to apply for the new position.  Therefore, even if Mr. DeJarnett's actions amounted to an adverse employment action, Dr. Stewart still cannot prove the first requirement of an "opposition" retaliation claim because there is no evidence to suggest that anyone on the CCBOE knew about her complaints or opposition before the action was taken, and thus, could have been in a position to retaliate against her.

Dr. Stewart's claim is further impeded because the evidence does not reveal an adverse employment action *taken by her employer*.  Title VII "shields employees *only from employers* who retaliate against them for committing legally protected acts." *Kipp v. Mo. Highway & Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002)

(emphasis added). Viewed in the light most favorable to Dr. Stewart, the evidence shows that Mr. DeJarnett threatened that, if she did not apply for the new position, she would not have a job, and, if true, such threats are not condoned by this court. However, Mr. DeJarnett was not her employer. There is no evidence that he had authority to fire her or remove her. Rather, the evidence establishes that the CCBOE alone possessed that authority. There also is no evidence that Mr. DeJarnett had any influence over or input into the CCBOE's firing or removal decisions. Furthermore, there is evidence that Dr. Stewart realized she was tenured in her vice principal position and could only be removed for cause, indicating that she knew that Mr. DeJarnett alone would not be able to carry through with his threat. (Doc. # 39, Ex. 31 at 68-69.) For this reason as well, Dr. Stewart fails to establish a prima facie case of retaliation.

Even if Dr. Stewart's claim was not brought as a retaliation claim, the conduct does not suggest an independent act of gender discrimination. As both Dr. Stewart and Mr. Moore note, the threat to fire or reassign Dr. Stewart was a violation of policy. But a violation of policy does not equate to gender discrimination under Title VII. While the threat from Mr. DeJarnett may have been unfair and in violation of policy, Dr. Stewart has not presented any evidence that Mr. DeJarnett took that action against Dr. Stewart due to gender discrimination. Mr. DeJarnett may have done it to

44

consolidate his support in the administration, to try to change the culture as part of his desire for a new direction in the administration, or simply out of spite. However, "[u]nfair treatment, absent discrimination based on race, sex, or national origin, is not an unlawful employment practice under Title VII." *Coutu v. Martin Cnty. Bd. of Cnty. Comm'rs*, 47 F.3d 1068, 1074 (11th Cir. 1995).

In sum, Dr. Stewart cannot make out a prima facie case of retaliation. She cannot show that the CCBOE was aware of her opposition to perceived discrimination before the adverse employment action occurred. The CCBOE cannot retaliate against behavior of which it is unaware. Summary judgment is due to be entered in Defendants' favor on the Title VII retaliation claim.

## V. CONCLUSION

The Teachers' claims against the individual defendants cannot stand, because gender discrimination is not actionable under 42 U.S.C. § 1981, removing the basis for the § 1983 claim. Those claims are due to be dismissed. For the reasons stated, the CCBOE is entitled to summary judgment on all of the Teachers' Title VII claims.

Accordingly, it is ORDERED that Defendants' Motion for Summary Judgment (Doc. # 31) is GRANTED in part as to the Title VII claims, and the remaining claims are DISMISSED with prejudice. A separate judgment will be issued.

DONE this 4th day of January, 2012.

/s/ W.  Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE